The State, ex rel. McLean, Appellant, *v.* Industrial Commission of Ohio et al., Appellees.

[Cite as State, ex rel. McLean, *v.* Indus. Comm. (1986), 25 Ohio St. 3d 90.]

(No. 85-878—Decided July 23, 1986.)

*Hobday & Piper* and *Brian S. Piper,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Gerald H. Waterman,* for appellee Industrial Commission.

*Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr.,* and *Katharine Bowman Bills,* for appellee General Motors Corporation, Fisher Body Division.

DOUGLAS, J. The issue presented by this case is whether the commission abused its discretion and acted contrary to law by failing to award compensation pursuant to R.C. 4123.57(C) for loss of a leg. For the reasons set forth below, we hold that the Industrial Commission does not abuse its discretion in awarding a claimant who suffers an amputation of the lower limb below the knee, to which an effective prosthesis may be attached, compensation for the loss of a foot pursuant to R.C. 4123.57(C).

In accordance with Section 35, Article II of the Ohio Constitution and R.C. Chapter 4123, the Industrial Commission is vested with the authority to formulate policies and standards for administering the Workers' Compensation Act. In relevant part, the Constitution states:

"* * * Laws may be passed establishing a board which may be empowered to classify all occupations, * * * to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and *to determine all right of claimants thereto.* * * *" (Emphasis added.)

R.C. 4121.32 requires that "[t]he rules covering operating procedure

and criteria for decision-making" be set forth in operating manuals which detail the steps to be taken in performing the tasks assigned to the commission. Pursuant to its legislative authority and consistent with its own procedural guidelines, the commission determined that in accordance with R.C. 4123.57(C), appellant's amputation constituted a loss of the foot and awarded benefits accordingly.

R.C. 4123.57 provides, in relevant part:

"(C) In cases included in the following schedule the compensation payable per week to the employee shall be sixty-six and two-thirds per cent of his average weekly wage * * * and shall continue during the periods provided in the following schedule:

"* * *

"For the loss of a foot, one hundred fifty weeks.

"For the loss of a leg, two hundred weeks. * * *"

Appellant challenges the commission's determination that he suffered a loss of a foot only, and, contending that R.C. 4123.57 does not define what constitutes a leg or a foot, seeks to have this court define for the commission the term "leg" to also include that portion of the lower extremity between the knee and the ankle.

Appellees maintain that the determination of appellant's loss was made in absolute compliance with long-standing administrative policy and judgment and, as such, should not be disturbed. It is with appellees' contention that we agree.

At the onset we note that it is well-settled that courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command. *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St. 2d 173, 181 [58 O.O.2d 393]; *Miami Conservancy District* v. *Bucher* (1949), 87 Ohio App. 390 [43 O.O. 114]. Part of the evidence presented in this case were portions of the Claims Examiner's Manual of the Bureau of Workers' Compensation ("bureau") and publication No. PA-480 published by the bureau and entitled Performing a Medical Examination for the Industrial Commission of Ohio. For purposes of R.C. 4123.57(C), the Amputation Illustration and Chart contained in the manual sets forth generally that a below-the-knee amputation is considered as the loss of a foot, while an above-the-knee amputation is considered as a loss of a leg. While the knee is the starting point for analysis, it is clear that the commission makes its ultimate determination on a case-by-case basis. Thus, the claims examiner's manual provides:

"If the level of amputation of the hand or foot is such that an artificial appliance, when it is applied, would render the elbow joint or the knee joint stiff, then the claimant is entitled to the loss of arm or leg, whatever may be the case. It must be proven that the appliance can not be applied without making these joints useless."

The commission concluded that in appellant's case, a prosthesis could be attached and used effectively. This factual conclusion was supported not only by the fact that appellant did not dispute it, but also by the medical report of Dr. William J. Krech, who concluded that appellant "* * * has a good functional stump and a prosthesis that works very well."

The commission's determination that appellant suffered the loss of a foot rather than a leg is also supported by other evidence. The documents filed by appellant throughout most of the administrative proceedings refer to the loss as that of his foot. For example, the original agreement as to the extent of loss, entered into by the parties in November 1979, describes the injury as an amputation of the right foot. In appellant's June 1980 application for determination of the percentage of permanent partial disability he describes his injury as an amputation of the foot. Additionally, the majority of doctors who examined appellant, including his own physician, similarly characterized the injury as loss of a foot. Finally, publication No. PA-480 instructs examining physicians that they may use among other publications, the American Medical Association's Guides to the Evaluation of Permanent Impairment as a guide for determining impairment. The AMA publication, while not identical to the bureau's Claims Examiner's Manual, in that it is based on a gradation of impairment, does indicate that an injury such as that suffered by appellant would not result in a greater impairment to the lower extremity than would the amputation of the foot at the ankle.

Accordingly, in light of the evidence supporting the commission's decision, it is the judgment of this court that the commission did not abuse its discretion in the case at bar. Additionally, and consistent with the reasoning herein, we specifically decline to substitute our judgment for that of the commission by defining what level of amputation constitutes the loss of a leg or the loss of a foot. Rather, we afford the administrative decision *sub judice* the deference due to it under our law.

Turning next to the writ itself, the standards to be applied by this court when considering a complaint for a writ of mandamus are well-settled. In *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 167 [22 O.O.3d 328], this court noted:

"A writ of mandamus is an extraordinary remedy, and the burden of showing a clear legal right to this writ as a remedy from a determination by the Industrial Commission of the extent of claimant's injury is upon relator."

This burden can only be met upon a showing that there is no evidence upon which the commission could have based its conclusion. *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66]. Where some evidence exists which supports the finding of the commission, mandamus will not lie. *State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39, 42 [13 O.O.3d 30]. Accordingly, since there is substantial pro-

bative and reliable evidence supporting the commission's decision, we affirm the judgment of the court of appeals denying the writ herein.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

CELEBREZZE, C.J., and C. BROWN, J., dissent.

CLIFFORD F. BROWN, J., dissenting. It is my view that where a claimant suffers an amputation of a substantial portion of his leg due to a work-related injury, he is entitled to compensation for loss of a leg under R.C. 4123.57(C). Therefore, I dissent.

The term "leg" is defined in Webster's New Collegiate Dictionary (1980) as "the part of the vertebrate limb *between the knee and the foot.*" (Emphasis added.) Appellant suffered the loss of precisely this portion of his lower extremity. Whatever definition is used, appellant certainly lost considerably more than merely his foot. Physical amputation of his lower right leg occurred at a point approximately five inches below the knee.

R.C. 4123.95 requires that the Workers' Compensation Act shall be construed liberally in favor of injured employees. R.C. 4123.57(C), providing for compensation for loss of body members, does not define what constitutes loss of a leg sufficient to qualify for compensation therefor. If the majority construed the term "loss of a leg" liberally as the legislature has mandated, any loss of a substantial portion of the leg would qualify as loss of a leg. "* * * [W]here a section of the Workmen's Compensation Act will bear two reasonable but opposing interpretations, the one favoring the claimant must be adopted." *State, ex rel. Sayre,* v. *Indus. Comm.* (1969), 17 Ohio St. 2d 57, 62 [46 O.O.2d 297].

Instead of adhering to this clear mandate, the majority has adopted a narrow and artificially restricted interpretation in a case where the statute is actually unclear as to when a claimant is entitled to the longer period of compensation. This approach can scarcely be described as liberal construction in favor of the injured worker. Appellant's loss of his lower extremity at a point five inches below the knee can hardly be fairly characterized as the loss of a "foot." This is true regardless of how the Claims Examiner's Manual referred to by the majority characterizes appellant's loss. This court is not justified in giving any deference whatsoever to administrative interpretations which defy the liberal construction mandate contained in R.C. 4123.95.

For the foregoing reasons, I would reverse the judgment of the court of appeals and grant appellant's writ directing the Industrial Commission to award him compensation for loss of a leg in accordance with R.C. 4123.57(C).

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.