OPINION
{¶ 1} Plaintiffs-appellants, Frisch's Restaurants, Inc., United Dairy Farmers, Inc., J.W. Harris Co., Inc., and Peck, Hannaford Briggs (collectively "appellants"), appeal from the March 28, 2005 judgment of the Franklin County Court of Common Pleas denying their motion for class certification pursuant to Civ.R. 23(B)(2) and (3). The trial court found that certification was both premature and could result in unnecessary discovery procedures and unwarranted expenditure of judicial time. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} The background of this case involves the several different ways in which employers participate in Ohio's workers' compensation program. In order to maintain coverage in the program, employers must pay assessments and premiums into the State Insurance Fund ("fund"). The Administrator ("appellee") of the Ohio Bureau of Workers' Compensation (bureau"), at the time, James Conrad was charged with overseeing the Fund, investing payments made by complying employers and taking other actions in accord with his administrative obligations.
 {¶ 3} Appellee, for and through the bureau, offers obligated employers various options for workers' compensation insurance. An employer may elect: (1) base rated coverage; (2) experience rated coverage; (3) group rated coverage; (4) retrospectively rated coverage; or (5) self-insurance coverage. Like traditional insurance programs, the first three categories of coverage require employers to pay a semi-annual premium.
 {¶ 4} Employers choosing retrospectively rated coverage ("retro program") pay a three-part premium. First, participants in the retro program pay a minimum, i.e., significantly less than the traditional programs, semi-annual premium. Second, an employer pays an annual adjustment by which it pays for claims filed in the previous year. This annual adjustment is charged each year the employer participates in the retro program; participation is limited to a ten-year period ("ten-year evaluation period"). The third payment is a final adjustment assessed at the end of the ten-year evaluation period and covers any claims filed during that period that were not already paid.
 {¶ 5} The bureau may also permit an employer to have self-insurance coverage. An employer seeking self-insured status must apply and be approved by the bureau. Once approved, a self-insured employer will pay claims directly through their own insurance. Self-insured employers still pay certain assessments and contributions to the fund for various administrative and guaranty purposes. However, they do not pay premiums into the fund.
 {¶ 6} Employers are permitted to switch from one insurance program to another on a prospective basis. For purposes of this case, little changes when employers switch from one premium paying option to another. On the other hand, when employers in the retro program switch to a self-insured program, they must continue to pay the adjustments arising from the ten-year evaluation period regardless of their status as self-insured. Still, once self-insured, employers are no longer obligated to pay the yearly minimum semi-annual premiums for the retro program.
 {¶ 7} Appellants are all employers that participated in the retro program and subsequently decided to change to a different program. Frisch's Restaurants, Inc., United Dairy Farmers, Inc., and J.W. Harris Co., Inc. all chose to become self-insured employers, while Peck, Hannaford Briggs switched to group-rated coverage. All appellants participated in the retro program at one time or another during the proposed class period years of 1995 through 2002 ("class period").
 {¶ 8} The fund is comprised of the assessments and premiums paid by participating employers, as well as returns on investments made by appellee. There is a principle amount that is used for the payment of benefits, and appellee must maintain a surplus to cover liabilities and ensure solvency. Occasionally, the fund will contain excess surplus, i.e., more than is deemed necessary to ensure solvency. Such an excess surplus existed during the class period.
 {¶ 9} If deemed appropriate by appellee, R.C. 4123.32(A) authorizes appellee to return such excess surplus to a "subscriber" to the fund. The returns can be made in either the form of cash refunds or a reduction of premiums (also called "dividend credits"). During the class period, appellee elected to declare a surplus and provided "subscribers" dividend credits in the form of reduced semi-annual premiums. Appellee defined "subscribers" as employers currently participating in the state fund program. Because appellants were self-insured, and not currently participating in the fund, appellee concluded that they were not entitled to receive any dividend credits. Appellants believe they are entitled to dividend credits.
 {¶ 10} Appellants filed a complaint in the Franklin County Court of Common Pleas, alleging that they are entitled to dividend credits on the retrospectively-rated state fund premiums they incurred and paid for the policy years during the class period in which they were not solely a retrospectively-rated state fund employer. Appellants filed the complaint on behalf of themselves and on behalf of a proposed class. On June 23, 2004, appellants filed a motion for class certification.
 {¶ 11} In reviewing the motion, the trial court first approached the issue of certification under Civ.R. 23(B)(2). Applying this court's decisions in Horvath v. State Teachers Retirement Bd. (Mar. 31, 1995), Franklin App. No. 94APE07-988, as well as in Smith v. State TeachersRetirement Bd. (Feb. 5, 1998), Franklin App. No. 97APE07-943 ("Smith I"), and Smith v. State Teachers Retirement Bd., Franklin App. No. 01AP-1281, 2002-Ohio-4391 ("Smith II"), the trial court determined that certifying a class pursuant to Civ.R. 23(B)(2) was premature. Analyzing appellants' motion under Civ.R. 23(B)(3), the court determined that class certification was not the superior method with which to determine appellants' claims. Therefore, the trial court denied appellants' motion to certify.
 {¶ 12} Appellants appeal the trial court's decision, asserting a single assignment of error:
The trial court erred in denying Plaintiffs' Motion for Class Certification.
 {¶ 13} A trial court has broad discretion in deciding whether a class action may be maintained and that conclusion will not be disturbed absent a showing of an abuse of discretion. Marks v. C.P. Chemical Co., Inc.
(1987), 31 Ohio St.3d 200, syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. In applying this standard, due deference is given the trial court's decision, as it is in the best position to understand its docket management and analyze the inherent complexities that arise from class action litigation. Marks, at 201. "A finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously." Id.
 {¶ 14} Though broad, the trial court's discretion is not without bounds. Rather, the trial court must work within the framework of Civ.R. 23, carefully applying the requirements found therein and conducting a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. Hamilton v. Ohio Savings Bank (1998), 82 Ohio St.3d 67, 70. Specifically, "[a] trial judge must make seven affirmative findings before a case may be certified as a class action. Two prerequisites are implicitly required by Civ.R. 23, while five others are specifically set forth therein." Warner v. Waste Management, Inc. (1988), 36 Ohio St.3d 91, paragraph one of the syllabus.
 {¶ 15} Two implied requirements must be met before certification is possible. First, there must be an identifiable class, which is unambiguous in definition. Horvath, citing Warner, supra, at 96. Second, the class representatives must be members of that unambiguous class. Id. Once these factors are satisfied, the court must decide whether the five express requirements found within Civ.R. 23 are fulfilled.
 {¶ 16} Four of the five express requirements are set forth in Civ.R. 23(A). Those four requirements are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Horvath, citing Warner, at 97-98. The element of numerosity necessitates that the class be so numerous that joinder of all of its members is impracticable. Id. Commonality requires that there are questions of law or fact common to the class. Id. The typicality factor demands that the claims or defenses of the class representatives are typical of the claims or defenses of the class, and adequacy requires that the representatives will fairly and adequately protect the interests of the class as a whole. Id.
 {¶ 17} Finally, the seventh mandatory finding for certification of a class is that one of the three requirements set forth in Civ.R. 23(B) is met. Horvath, citing Warner, at 94. Accordingly, the class action will be maintainable if:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * *
Civ.R. 23(B).
 {¶ 18} The party seeking certification bears the burden of proving that all of the above prerequisites of Civ.R. 23(A) and one of the provisions of Civ.R. 23(B) are satisfied. Horvath. Moreover, if any one of the seven requirements is not met, certification of the class must be denied. Id. Correspondingly, if the trial court finds that one of the prerequisites is not present, the court need not continue in its rigorous analysis as the inquiry into class certification is at an end.[1]
 {¶ 19} Appellants' sole assignment of error charges that the trial court abused its discretion in denying class certification. The trial court began its inquiry by analyzing whether or not appellants' proposed class action could satisfy the seventh element of the test set forth above: meeting one of the requirements set forth in Civ.R. 23(B). Specifically, appellants' motion asserted that the proposed class met the constraints of Civ.R. 23(B)(2) or (B)(3).
 {¶ 20} Here, appellants' class would be properly certified under Civ.R. 23(B)(2) if appellee acted or refused to act on grounds generally applicable to the class, thus making injunctive or declaratory relief appropriate.[2] Marks, at 203. Appellants' complaint sought a "declaratory judgment that establishes their right to pay [appellee] retrospectively rated workers' compensation premiums incurred during the Class Period on the same terms and conditions as all other premium paying employers to whom [appellee] granted the premium relief or dividend credits." Complaint, at ¶ 56. The complaint continues to set forth several specific declarations sought by appellants, such as a declaration that "all state fund employers as that term is defined in O.A.C. Rule 4123-19-01(A) are `subscribers' to the State Insurance Fund and thus eligible for the premium relief authorized by R.C. § 4123.32[.]" Id. at ¶ 56(b)(iii). Appellants also requested that the court declare that "by virtue of their ongoing payment of state fund premiums incurred during the Class Period, [appellants] were intended beneficiaries of the excess surplus that existed in the Fund during said Period, and [appellee's] refusal to distribute that excess surplus to [them] on the same terms and conditions as all other premium paying employers violated the legal rights of [appellants] as intended beneficiaries of that excess surplus[.]" Id. at ¶ 56(b)(vi). Finally, appellants solicited the court for a declaration that:
* * * [N]o rational basis [exists] to deny [appellants] their fundamental right to pay the same retrospectively rated premiums for the same policy years on the same terms and conditions as all other employers, and that the [appellee's] refusal to recognize and comply with this fundamental right violates [appellants'] rights to equal protection of the law pursuant to Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.
Complaint, at ¶ 56(b)(vii).
 {¶ 21} Presumably, then, appellants challenge the bureau's actions of: (1) not including self-insured employers in the definition of "subscribers" to the fund; and (2) not granting dividend credits to appellants in the same manner in which other "subscribers" were granted such credits. Thus, at first glance, appellants' class would be suitable for certification under Civ.R. 23(B)(2), as appellants challenge actions generally applicable to the class as a whole, which are conducive to declaratory relief. However, there are exceptions to the general rule.
 {¶ 22} In Horvath, this court encountered a situation in which an injunctive or declaratory class is not necessary, even if it would otherwise meet the standard of Civ.R. 23(B)(2). There, the plaintiff challenged the constitutionality of a state statute involving the crediting of interest to teacher retirement accounts. The trial court denied the plaintiff's motion for class certification. We affirmed, noting that the State Teachers Retirement System would be required to consistently implement the final decision of the highest court. Id. Thus, when an individual plaintiff's request for injunctive or declaratory relief would automatically accrue to the benefit of others who are similarly situated, a trial court does not abuse its discretion in refusing to certify a class action. Id., citing Krawczyk v. Wharram
(July 14, 1989), Lucas App. No. L-88-243.
 {¶ 23} Subsequently, we have applied the rationale found in Horvath to similar situations. Often noting that a primary principle behind class action suits is to simplify the resolution of complex litigation, we have found that — where an individual plaintiff, or a small group of plaintiffs, can obtain relief for the greater whole — certifying a class is an unnecessary expenditure of court time and energy. In Smith I,
plaintiffs sought to certify a class challenging the formula used by the State Teachers Retirement Board ("STRB") in calculating monthly retirement benefits as contrary to a state statute. Again, we noted that "denial [of class certification] was appropriate, given that a verdict in favor of the [plaintiffs] in this matter would necessarily establish an identical legal framework applicable to all STRS members." Id. We reaffirmed the trial court's decision not to certify a class in SmithII, supra.
 {¶ 24} Here, respecting the foundation of the above cases, the trial court found that class certification under Civ.R. 23(B)(2) was premature, as a determination regarding whether the BWC improperly denied plaintiffs dividend credits would also establish whether proposed class members were improperly denied such credits. Simply put, appellants — and, vicariously, the proposed class — could receive their requested relief without resorting to class action litigation. However, appellants submit that the reasoning behind Horvath and Smith I is not applicable to the case at hand, arguing that they are not challenging the constitutionality of R.C. 4123.32. Instead, they challenge appellee's "selective and arbitrary implementation" of the statute.
 {¶ 25} We find appellants' argument to be unpersuasive. While appellants may not challenge the constitutionality of the statute itself, they undeniably challenge the constitutionality of its implementation. This is clear from the allegations within the complaint, as well as the sought declarations, such as a judgment declaring that "no rational basis [exists] to deny [appellants] their fundamental right to pay the same retrospectively rated premiums * * *, and that the [appellee's] refusal to recognize and comply with this fundamental right violates [appellants'] rights to equal protection of the law pursuant to Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution." Complaint, at ¶ 56.
 {¶ 26} Moreover, the plaintiffs in Smith I did not challenge the constitutionality of a statute, but argued that the STRB implemented policies contrary to statute. The question is not whether a proposed class's challenge is constitutional in nature; it is whether the requested relief would automatically accrue to the benefit of those in the proposed class without resort to class litigation. Here, a determination regarding the propriety of appellee's definition of a "subscriber" or policies granting dividend credits would automatically benefit any organization in the same position as appellants.
 {¶ 27} Appellants also contend that the trial court's decision would not benefit others because the court only has power over those parties before it. Thus, even if appellants prevailed, the trial court could not order the bureau to make distributions to non-party organizations. However, appellants overlook that the court's decision will necessarily result in the bureau applying the same definitions and standards to all of its participants. Further litigation would only be necessary if the bureau refused to comply with a lawful court order.
 {¶ 28} Accordingly, we find that the trial court did not abuse its discretion in determining that class certification under Civ.R. 23(B)(2) is improper. We now turn to the issue of whether class certification is appropriate under Civ.R. 23(B)(3).
 {¶ 29} Before a class may be certified, pursuant to Civ.R. 23(B)(3), a court must determine that two separate factors are present. The court must find that questions of law and fact common to members of the class predominate over any questions affecting only individual members. In addition, the court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Civ.R. 23(B)(3).
 {¶ 30} In this case, the trial court declined to certify the proposed class upon finding that a class action is not the superior method of handling the litigation. The court cited Gottlieb v. City of SouthEuclid, 157 Ohio App.3d 250, 2004-Ohio-2705, in reaching this conclusion. Applying Horvath, the Gottlieb court found that, because certification of class action prior to determining the underlying merits of a complaint challenging a statute can lead to unnecessary discovery procedures and unjustified expenditure of judicial time and energy, it follows that class certification is not the superior method for dealing with such constitutional claims. Id. at ¶ 33. Similarly, the trial court found that a class action is not the superior method for handling the litigation because class litigation would result in unwarranted discovery and wasted judicial resources. The trial court also noted that, if appellants prove wrong in their underlying complaint, the issue of class certification would be moot. On the other hand, if appellants are correct, the issue of class certification may be revisited at the appropriate time.
 {¶ 31} This court finds no fault or capriciousness in the trial court's reasoning. Appellants' contention that Gottlieb is inapplicable because that court was conducting an examination into the propriety of certification under Civ.R. 23(B)(2) is without merit. That the analysis under Civ.R. 23(B)(2) leads to the conclusion under Civ.R. 23(B)(3) is of no consequence. The trial court found that the proposed class action was not superior to litigation between appellants, sans class, and the bureau — a finding that is part of the analysis under Civ.R. 23(B)(3). Once the trial court decided that a class action was not the superior manner in which to bring and adjudicate appellants' claims, there was no need to go into further in-depth analysis of whether questions of law and fact common to members of the class predominated over questions affecting only individuals.
 {¶ 32} In sum, we find that Horvath and Smith I and II control the analysis in this case and that the trial court appropriately applied the reasoning found therein to the facts at hand. The trial court reached a logical conclusion, one that cannot be characterized as arbitrary, unreasonable or unconscionable. Thus, we find no abuse of discretion and uphold the trial court's decision. Accordingly, appellants' sole assignment of error is overruled.
 {¶ 33} Based on the foregoing, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and French, JJ., concur.
[1] Trial courts are still encouraged to set forth the factual findings underpinning their decision in order to provide a solid basis upon which reviewing courts can determine whether the trial court exercised their discretion appropriately. Hamilton, supra, at 70-71.
[2] This analysis is based upon the assumption that all six remaining prerequisites are satisfied.