FRISCH'S RESTAURANTS, INC. et al., Appellants,

v.

CONRAD, Admr., Appellee.

[Cite as *Frisch's Restaurants, Inc. v. Conrad,* 170 Ohio App.3d 578, 2007-Ohio-545.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–117.

Decided Feb. 8, 2007.

Scheuer, Mackin & Breslin, L.L.C., and Robert S. Corker; Kegler, Brown, Hill & Ritter and Thomas W. Hill, for appellants.

Hahn, Loeser & Parks, L.L.P., Richard T. Prasse, Kim M. Hastings, Dawn Rae Grauel, and Danny L. Caudill; Marc Dann, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee.

KLATT, Judge.

{¶ 1} This is an appeal by plaintiffs-appellants, Frisch's Restaurants, Inc., United Dairy Farmers, Inc. ("UDF"), J.W. Harris Co., Inc., and Peck, Hannaford & Briggs ("PHB"), from a decision of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, James G. Conrad, Administrator of the Ohio Bureau of Workers' Compensation ("bureau"). During the course of this action, Conrad was succeeded as administrator by William E. Mabe.

{¶ 2} Appellants' declaratory judgment action seeks to recover workers' compensation premium rebates, also commonly referred to as "dividend credits," that were denied by the bureau. Appellants initially sought certification of the action as a class action pursuant to Civ.R. 23(B)(2); the trial court's denial of certification was affirmed by this court in *Frisch's Restaurant, Inc. v. Conrad*, Franklin App. No. 05AP–412, 2005-Ohio-5426, 2005 WL 2562596. Upon remand, appellants proceeded in their individual capacities before the trial court, which eventually denied summary judgment for appellants and granted it to appellee. The matter is now before us on appeal from that summary judgment, and appellants bring the following assignments of error:

1. The trial court erred by granting defendant's motion for summary judgment against plaintiffs Frisch's Restaurants, Inc., United Dairy Farmers, Inc. and J.W. Harris Co., Inc. on the ground that these plaintiffs did not have the legal status of subscribers to the State Insurance Fund subsequent to the effective dates of their self-insurance privilege and thus were not thereafter entitled to premium dividend credits pursuant to O.R.C. § 4123.32(A).

2. The trial court erred by granting defendant's motion for summary judgment against plaintiffs Frisch's Restaurants, Inc., United Dairy Farmers, Inc. and J.W. Harris Co., Inc. on the ground that defendant has the discretion

to interpret what the legislature intended by the term "subscribers" as used in O.R.C. § 4123.32(A), that defendant exercised this discretion reasonably and that defendant was therefore entitled to judgment as a matter of law.

3. The trial court erred by granting defendant's motion for summary judgment against plaintiff Peck, Hannaford & Briggs, as the trial court provided no explanation or reasoning for rendering summary judgment against this particular plaintiff.

4. The trial court erred in denying plaintiffs' motion for summary judgment.

{¶ 3} This case concerns the manner in which employers participate in Ohio's workers' compensation program and pay premiums for this coverage. Specifically at issue is the system under which the bureau, under certain circumstances, may grant employers premium rebates or reductions reflecting a distribution of an "excess surplus" of premiums, that is, a fund surplus above the amount needed to ensure the solvency of the workers' compensation system for all claimants and employers.

{¶ 4} The parties agree on the following general characterization of the overall premium system. Employers subject to Ohio workers' compensation coverage may choose coverage through the state fund or may apply, with the approval of the bureau, to be self-insured. Self-insured employers obtain private insurance to cover their workers' compensation requirements. For state-fund employers, the bureau offers four principal options: (1) base-rated coverage, (2) experience-rated coverage, (3) group-rated coverage, and (4) retrospectively rated coverage, known as the "Retro Program." Base-, experience-, and group-rated employers pay a semiannual premium for their workers' compensation coverage in a given year, computed upon one of these three methods of determining claim risk and exposure for the fund. In contrast, employers participating in the Retro Program make payments under a more complicated, three-part scheme for any given year of coverage, and coverage under this method invokes a ten-year stream of payments for each covered year. Part one is a semiannual premium in the coverage year at a substantially reduced rate compared to the base-, group-, or experience-rated premiums. Part two consists of a series of annual adjustments in subsequent years, under which the employer reimburses the bureau for amounts paid for claims related to the covered year. The third part-payment for the covered year is a final adjustment paid at the end of the ten-year evaluation period. This final payment covers any claims paid from the fund during the ten-year evaluation period that were not covered by the annual adjustment payments and, in addition, estimates a reserve for future fund exposure to claims filed during the covered year.

{¶ 5} Employers may switch from one insurance option to another within the state fund or may abandon current state-fund coverage to become self-insured. An employer departing from the Retro Program, however, will continue to pay its annual and final adjustment payments through the remainder of the ten-year period related to each covered year of participation in the Retro Program, whether the employer leaves the Retro Program to select another state-fund premium option or abandons current-year state-fund coverage to become self-insured.

{¶ 6} R.C. 4123.32(A) requires the bureau to adopt rules providing for the return of excess surplus premium to fund employers:

The administrator * * * shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including the following:

(A) A rule providing that in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of premiums, regardless of when the premium obligations have accrued.

{¶ 7} The bureau has accordingly promulgated Ohio Adm.Code 4123-17-10, which provides:

Pursuant to sections 4123.29 and 4123.34 of the Revised Code, the administrator is required to keep premiums at the lowest level consistent with the maintenance of a solvent state insurance fund and of a reasonable surplus. Pursuant to section 4123.32 of the Revised Code, in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of premiums, regardless of when the premium obligation has accrued. The administrator, with the advice and consent of the workers' compensation oversight commission, shall have the discretion and authority to determine whether there is an excess surplus of premium; whether to return the excess surplus to employers; the nature of the cash refunds or reduction of premiums; the employers who are subscribers to the state insurance fund who are eligible for the cash refunds or reduction of premiums; the payroll period or periods for which a reduction of premium has accrued and the premium payment for which the reduction of premium applies; the applicable date of the cash refunds or reduction of premiums; and any

other issues involving cash refunds or reduction of premiums due to an excess surplus of earned premium.

{¶ 8} Apparently, the bureau initially declined to apply any R.C. 4123.32(A) premium rebates to any Retro Program annual adjustment or final adjustment payments by all Retro Program employers. The bureau later modified its position and awarded premium rebates to Retro Program employers against annual and final adjustment payments for prior coverage years, but only if the employers were insured through the Retro Program for the *current* coverage year—that is, the year in which the rebates were extended. This last restriction is at the heart of appellants' complaint.

{¶ 9} Appellant Frisch's participated in the Retro Program for coverage years 1992 to 1996, when it became self-insured pursuant to a buyout agreement with the fund. Appellant UDF participated in the Retro Program from 1989 to 1995, also becoming self-insured through a buyout agreement. Appellant Harris participated in the Retro Program from 1992 to 1996, when it became self-insured pursuant to a buyout agreement.

{¶ 10} In contrast, appellant PHB participated in the Retro Program from 1995 to 1998 and from 2000 to 2001, but did not elect to be self-insured through any period between 1995 and 2002 when it was not participating in the Retro Program. During the periods when it was not in the Retro Program, PHB was a group-rated state-fund subscriber. PHB accordingly received premium rebates during applicable periods on its group-rated premiums. On September 23, 1999, in exchange for a settlement payment of $218,059.39, PHB released the bureau from all claims for premium rebates against Retro Program annual and final adjustment premiums paid for 1996 through 1998, years in which PHB was both paying those premiums for past covered years and insured under the Retro Program for the current coverage year. This settlement reflected application of the bureau's change of policy for Retro Program employers so situated.

{¶ 11} Appellants' complaint seeks a declaration that they are entitled to premium rebates for various coverage years between 1995 and 2002, when they were participants in the Retro Program in that they made payments for prior coverage years even though their current coverage year risks were not in the Retro Program. For those same years, the complaint alleges, the bureau granted premium rebates to state-fund employers, but denied them to appellants Frisch's, UDF, and Harris on the grounds that they no longer had the status of state-fund employers, despite the fact that appellants, having recent coverage years in the Retro Program, continued to pay annual and final adjustments during this time for those previous coverage-year obligations. The bureau denied rebates to appellant PHB for its ongoing Retro Program annual adjustment and final adjustment premiums on the different basis that although PHB remained a

state-fund employer for current-year coverage, PHB's decision to switch from Retro to group-rated coverage meant that PHB could receive rebates only for its current-year group-rated premiums because the bureau did not recognize "dual status" employers. PHB was thus denied premium rebates for its annual and final adjustment Retro Program payments made during periods when PHB paid group-rated premiums and received corresponding premium rebates for those group-rate premiums.

{¶ 12} The trial court has upheld the bureau's denial of premium rebates to appellants for the years in question, leading to this appeal.

{¶ 13} We initially note that this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.

{¶ 14} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Bard v. Society Natl. Bank* (Sept. 10, 1998), Franklin App. No. 97APE11–1497, 1998 WL 598092. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316. Therefore, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard.*

{¶ 15} Summary judgment is particularly suitable in cases solely involving determinations of law. Since the present declaratory judgment action is submitted on uncontested facts as to the appellants' years and status of participation in Ohio's workers' compensation system, it involves only a determination of their legal rights under the statutes and rules governing that system and is accordingly particularly well suited to summary judgment.

{¶ 16} Appellants' first three assignments of error assert that the trial court erred in agreeing with the bureau that Frisch's, UDF, and Harris did not have the legal status of subscribers to the state fund during the years for which

they sought premium rebates under R.C. 4123.32(A). Appellants additionally argue that denial of premium rebates to employers in their position while allowing rebates to current-year Retro Program employers violates appellants' constitutional right to equal protection under the law by improperly creating two classifications of premium-paying Retro Program employers.

{¶ 17} The bureau's position is that under R.C. 4123.32(A), an employer must be a subscriber to the fund in order to receive premium rebates, and the term "subscriber" excludes appellants. In the bureau's interpretation, the bureau has discretion under its own regulation promulgated pursuant to the statute, Ohio Adm.Code 4123–17–10, to "determine * * * the employers who are subscribers to the state insurance fund who are eligible for the cash refunds or reduction of premiums." The bureau thus asserts that it has the sole right and obligation to define who is a subscriber to the state fund for purposes of premium rebates, just as the bureau may, in its judgment, determine when an excess surplus exists that warrants issuance of those premium rebates to qualified employers.

{¶ 18} Pursuant to this discretion, the bureau's position is that the determining factor in defining a subscriber under R.C. 4123.32(A) is the type of workers' compensation coverage, whether state-fund or privately insured, subscribed to by the employer for coverage in the year the premium rebate is declared. Because Frisch's, UDF, and Harris were self-insured for the years 1995 (Frisch's) or 1996 (UDF and Harris) through 2002, the period for which they claim entitlement to premium rebates, the bureau maintains that they are not subscribers for purposes of receiving premium rebates for this period, even if during this time these employers paid a continuing obligation for pre–1995 Retro Program covered years.

{¶ 19} The Ohio Revised Code does not explicitly define the term "subscriber" for purposes of R.C. 4123.32(A). Interpretation of this term in relation to the statute is accordingly a question of first impression before this court. In considering this question, we remain mindful of the basic rule of administrative law that an agency has the discretion to promulgate and interpret its own rules, and this court will give an agency due deference for those determinations as long as its actions are reasonable in carrying out the statutory dictates of the legislature: "It is axiomatic that if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme." *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad* (2001), 92 Ohio St.3d 282, 287, 750 N.E.2d 130. The legislature may thus, in the normal course of implementation of a complex regulatory scheme, delegate to the bureau's substantial expertise the responsibility of executing in detail the legisla-

tive intent. *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 25 OBR 141, 495 N.E.2d 370.

{¶ 20} A cardinal rule of statutory interpretation is that words shall be given their plain and ordinary meaning. *Hubbard v. Canton Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, at ¶ 13. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." Id. at ¶ 14. However, words that have acquired a specialized or particular meaning, by legislative definition or otherwise, must be construed accordingly. R.C. 1.42.

{¶ 21} Of itself, the term "subscriber" is one of broadest possible interpretation, and the context in which the word appears in R.C. 4123.32(A) does not provide much guidance to establish what specific meaning this might imply in the framework of premium rebate allowance. However, regardless of whether alternative interpretations more satisfactory to appellants might be substituted, we apply the principle of administrative deference under *Northwestern*, 92 Ohio St.3d 282, 750 N.E.2d 130, and consider only the reasonableness of the interpretation applied by the bureau. We find nothing unreasonable in the bureau's interpretation of "subscriber" under R.C. 4123.32(A) to include only employers who are state-fund employers for risks arising in the year the premium rebate is authorized, allowing rebates only for the current state-fund program if more than one type of premium is paid, and denying rebates to employers who are not currently in the Retro Program but pay continuing rebates for past participation in that program. The appellants in this case have not articulated a basis upon which we can find that the bureau, in pursuing its statutory duty to collect premiums according to risk and to dispense rebates when and where prudence and solvency allow, has here acted in an inherently unreasonable manner. Nor can we find that the appellants have established that under the general scheme of premium payment, the bureau has no reasonable basis to make the technical distinction between the various types of premiums at issue here, the varying combinations of current and past year risk and coverage under which they are paid, and their eligibility for rebates.

{¶ 22} Turning to appellant's equal-protection arguments under Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution, we find those arguments also without merit. A statutory classification that involves neither a suspect classification nor a fundamental right will not violate these guarantees of equal protection if it bears a rational relationship to a legitimate government interest. *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181, citing *Metro. Life Ins. Co. v. Ward* (1985), 470 U.S. 869, 881, 105 S.Ct. 1676, 84 L.Ed.2d 751. Appellants do not argue that the right to workers' compensation premium rebates is a funda-

mental one, nor do they argue that they belong to a class historically subject to discrimination. We accordingly apply the rational-basis test to this issue.

{¶ 23} Under this test, a statute does not violate equal-protection guarantees merely because the classification " 'is not made with mathematical nicety or because in practice it results in some inequality.' " *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 8, quoting *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. The state has a rational interest in maintaining an effective and solvent workers' compensation program. *McCrone* at ¶ 10. As we have determined above, the bureau has rationally defined the status of "subscriber" under its governing statutes and has promulgated and interpreted a reasonable regulation pursuant thereto. The classification that results between various premium-paying employers and their entitlement to rebates is not calculated to the satisfaction of appellants and similarly situated employers, but it does pass the rational-basis test and is consistently applied across the defined class. We therefore find no constitutional violation in the bureau's disallowance of premium rebates.

{¶ 24} We accordingly find that the trial court's grant of summary judgment in favor of the bureau was not in error, because there remains no material issue of fact and the bureau is entitled to judgment as a matter of law. Appellants' first, second, and third assignments of error are overruled.

{¶ 25} Appellants' fourth assignment of error asserts that in addition to erring in granting summary judgment for the bureau, the trial court erred in failing to grant summary judgment in favor of appellants. Our disposition of the first three assignments of error compels denial of this one, and appellant's fourth assignment of error is overruled.

{¶ 26} In summary, we overrule appellants' first, second, third, and fourth assignments of error. The trial court judgment granting summary judgment in favor of appellee Ohio Bureau of Workers' Compensation is affirmed.

Judgment affirmed.

Travis, J., concurs.

Deshler, J., dissents.

Dana A. Deshler, Jr., J., retired, of the Tenth Appellate District, sitting by assignment.

Deshler, Judge, dissenting.

{¶ 27} Because I am unable to concur with the majority's conclusion with respect to the reasonableness of the bureau's interpretation and application of R.C. 4123.32(A), I must respectfully dissent.

{¶ 28} I agree with the majority that the current facts do not give rise to a violation of constitutional equal-protection guarantees. I further agree that our analysis of the first two assignments of error begins with the legislative intent expressed by use of the word "subscriber" in R.C. 4123.32(A). I part ways from the majority here, however, because I believe that the bureau has adopted an arbitrary and unreasonable interpretation of the governing statute. The bureau seems to argue that there is no restraint on its discretion to author and apply its regulations concerning premium rebates. In drafting its administrative regulation authorized under R.C. 4123.32(A), however, the bureau was not at liberty to adopt rules that conflicted with the legislature's express intent that "subscribers" to the fund be eligible for such premium rebates. Moreover, adoption of the bureau's position might have been easier in this case if the bureau had not muddied the waters by granting premium rebates to current Retro Program employers for both current-year premiums and past coverage year annual and final adjustments, a position that undermines any assertion that Retro Program payments differ in kind from other state-fund program payments that qualify for rebates.

{¶ 29} The legislature has indeed delegated to the bureau's substantial expertise the responsibility of executing in detail the legislative intent. *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 495 N.E.2d 370. In exercising this discretion, however, the bureau is not at liberty to interpret a term employed by the legislature in contradiction to the meaning intended by the legislature in its statute. The bureau invokes an administrative gloss put upon the term "subscriber" by the bureau after the fact, in an attempt to either assimilate or distinguish, as convenience of argument requires, this term from such equally loosely defined terms as "state risk" and "state fund employer." (The bureau's own personnel testified in deposition in this case that these were alternative terms used without significant distinction in the bureau's own internal business.) Considering the statute on its face, however, and in the context of the matters it intends to regulate, I am compelled to find that when the legislature employed the term "subscriber to the fund" in R.C. 4123.32(A) when addressing eligibility for premium rebates (particularly when the phrase "regardless of when the premium obligations have accrued" is appended to the provision), the legislature intended for employers currently affected by any ongoing premium obligations to receive corresponding premium rebates.

{¶ 30} The most reasonable and consistent reading of the statute is that R.C. 4123.32(A) is not concerned with the year in which risk accrues, covered claims are made, or covered claims are paid; it addresses excess surplus premium and the application thereof to premium-paying employers during the period in question. This is, in fact, entirely consistent with the bureau's decision to apply

premium rebates to annual adjustment and final adjustment premiums made by those Retro Program employers who continue in the Retro Program for the coverage year in which the rebates are declared.

{¶ 31} As I interpret R.C. 4123.32(A), I would find that the bureau was not at liberty to deny premium rebates to former Retro Program employers who continued to pay annual adjustments and final adjustments through the ten-year period following each covered year, even if the employers were self-insured for the year in which the premium rebates were authorized. I would accordingly sustain the first two assignments of error.

{¶ 32} In addition, the bureau argues independently that even if R.C. 4123.32(A) authorizes and requires premium rebates for appellants Frisch's, UDF, and Harris, they have waived their right to those rebates under the explicit terms of the buyouts they executed to become self-insured. I find that the language of this waiver does not encompass the future Retro Program payments at issue here. This conclusion is buttressed by the fact that the bureau found it necessary to later amend the language of the buyout agreement form at issue by adding to the paragraph concerned an explicit reference to *future* premium payments and waiver of rebates applicable thereto: "The employer * * * also expressly waives it [sic] claim to any future rebates or dividends from the State Insurance Fund for state fund employers payable after the effective date of the employer's self-insurance." (Emphasis added.) (Form exhibit in appellee's memo opposing summary judgment.) The need for that clarification at the least compels the conclusion that the waiver language was so ambiguous as to be unenforceable against the employer on the terms now suggested by the bureau, and at most, it may suggest that future premium payments were never the object of the waiver.

{¶ 33} Appellants' third assignment of error even more compellingly argues for reversal because it raises the denial of Retro Program premium rebates to appellant PHB in this action, despite the undisputed fact that PHB for all relevant periods remained a state fund employer for current-year coverage, the very criterion that the bureau invoked as lacking in order to deny rebates to the other appellants.

{¶ 34} PHB did not elect to become self-insured, but after leaving the state-fund Retro Program remained a state-fund employer paying group-rated premiums for current years while continuing to pay its ongoing Retro Program premiums for prior coverage years. Since PHB did receive premium rebates for its group-rated premiums in those years, the bureau's position is that it would be "inequitable" for PHB to receive premium rebates on the concurrent annual and final adjustment payments for prior Retro Program covered years.

{¶ 35} For the reasons given in my discussion of the first two assignments of error, in conjunction with the even more persuasive circumstance that PHB remained actively insured through the state fund under one program or another for all periods concerned, I would find that PHB was a subscriber for purposes of premium rebates under R.C. 4123.32(A) and may receive premium rebates for all annual and final adjustment payments under the Retro Program. There is nothing obviously inequitable in PHB receiving premium rebates for separate premium obligations under different state-fund programs in the same year. The bureau has not asserted that these separate premium obligations (and corresponding benefits) are reduced in light of each other or otherwise would give rise to some unjust enrichment in comparison to other state-fund employers who had not participated in the Retro Program in prior years. I would therefore sustain appellants' third assignment of error.

{¶ 36} Based upon my discussion of the issues raised in appellants' first three assignments of error, I would further find that there remains no genuine issue of material fact and appellants are entitled to judgment as a matter of law on the question of whether they must be considered "subscribers" under R.C. 4123.32(A) and are entitled to premium rebates applied to their annual and final adjustment payments under the Retro Program for prior coverage years. I would sustain appellants' fourth assignment of error as well.

{¶ 37} In summary, I would sustain appellants' four assignments of error, reverse the judgment of the trial court, and remand the matter with instructions to enter summary judgment in favor of appellees. I must respectfully dissent.