FRISCH'S RESTAURANTS, INC., ET AL., APPELLANTS, *v.* RYAN, ADMR., APPELLEE.

[Cite as *Frisch's Restaurants, Inc. v. Ryan,*
**121 Ohio St.3d 18, 2009-Ohio-2.**]

(No. 2007–0544—Submitted May 7, 2008—Decided January 6, 2009.)

---

CUPP, **J.**

{¶ 1} In this appeal, we consider whether the administrator of workers' compensation abused his[1] discretion in defining the term "subscriber" as contained in former R.C. 4123.32(A). For the reasons that follow, we hold that he did not abuse his discretion, and we affirm the court of appeals' judgment.

## Procedural History

{¶ 2} Appellants are four Ohio business entities—Frisch's Restaurants, Inc., United Dairy Farmers, Inc., J.W. Harris Co., Inc., and Peck Hannaford & Briggs—that paid premiums to the Bureau of Workers' Compensation for workers' compensation coverage. In 2004, appellants filed a class-action complaint for declaratory judgment in the Franklin County Common Pleas Court seeking a declaration that the appellants, and other employers within the purported class, were entitled to certain premium discounts or rebates that, beginning in 1996, the administrator had declared as a result of excess surplus in the state insurance fund.[2] The trial court denied the motion for class certification. The court of appeals affirmed that decision, *Frisch's Restaurant, Inc. v. Conrad,* Franklin App. No. 05AP–412, 2005-Ohio-5426, 2005 WL 2562596, and we declined discretionary review, 108 Ohio St.3d 1509, 2006-Ohio-1329, 844 N.E.2d 855.

{¶ 3} Thereafter, the parties filed cross-motions for summary judgment in the trial court. The trial court denied appellants' motion and granted the administrator's. The court of appeals affirmed. The matter is now before this court upon our acceptance of discretionary review.

## Analysis

{¶ 4} Appellants contend that they were subscribers to the state insurance fund during the applicable rebate period and were therefore eligible for and entitled to the rebates issued by the administrator. At the time, R.C. 4123.32 stated:

{¶ 5} "The administrator * * * shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:

{¶ 6} "(A) A rule providing that in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the

---

1. At the time in question, the administrator of workers' compensation was James Conrad. He has since been succeeded by Marsha Ryan. However, we will refer to the administrator with the male pronoun since Conrad, and not Ryan, is the administrator whose decision we review.

2. The excess surplus was returned to eligible subscribers to the state fund in the form of either rebates or a reduction of future premiums. These rebates and reductions are sometimes also referred to as "dividend credits," but we will refer to them generally as "rebates."

judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of premiums, regardless of when the premium obligations have accrued." Am.Sub.S.B. No. 223, 149 Ohio Laws, Part II, 3217, 3223–3224, effective March 14, 2003. (The prior relevant versions of R.C. 4123.32 contained substantively identical language to the Am.Sub.S.B. No. 223 version.)

{¶ 7} As required by the statute, the administrator promulgated the following administrative rule:

{¶ 8} "Pursuant to section 4123.32 of the Revised Code, in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of premiums, regardless of when the premium obligation has accrued. *The administrator, with the advice and consent of the workers' compensation oversight commission, shall have the discretion and authority to determine* whether there is an excess surplus of premium; whether to return the excess surplus to employers; the nature of the cash refunds or reduction of premiums; *the employers who are subscribers to the state insurance fund who are eligible for the cash refunds or reduction of premiums*; the payroll period or periods for which a reduction of premium has accrued and the premium payment for which the reduction of premium applies; the applicable date of the cash refunds or reduction of premiums; and any other issues involving cash refunds or reduction of premiums due to an excess surplus of earned premium." (Emphasis added.) Former Ohio Adm.Code 4123–17–10, 2002–2003 Ohio Monthly Record, 2429, effective April 28, 2003. (The prior relevant versions of Ohio Adm.Code 4123–17–10 contained substantively identical language to the 2003 version.)

{¶ 9} Former R.C. 4123.32(A) does not define what constitutes a "subscriber" to the state insurance fund. The administrator, exercising his discretion in accordance with former Ohio Adm.Code 4123–17–10, defined the term "subscriber" when he determined that a surplus warranted the return of the excess surplus. Appellants herein did not fall within the administrator's definition of "subscribers" to the fund and, consequently, were not eligible for the rebates.

{¶ 10} Appellants argue that they were entitled to the rebates because they were making payments to the fund for retrospectively rated coverage during the time the rebates were issued, even though they had switched from that category of coverage to "self-insured" or "group-rated" employers.[3] The court of appeals aptly described the differences among these employer categories as follows:

---

3. Appellants Frisch's Restaurants, Inc., United Dairy Farmers, Inc., and J.W. Harris Co., Inc., all switched from the Retro Program to self-insured status, while appellant Peck Hannaford & Briggs switched from the Retro Program to group-rated coverage.

{¶ 11} "Employers subject to Ohio workers' compensation coverage may choose coverage through the state fund or may apply, with the approval of the bureau, to be self-insured. * * * For state-fund employers, the bureau offers four principal options: (1) base-rated coverage, (2) experience-rated coverage, (3) group-rated coverage, and (4) retrospectively rated coverage, known as the 'Retro Program.' Base-, experience-, and group-rated employers pay a semiannual premium for their workers' compensation coverage in a given year, computed upon one of these three methods of determining claim risk and exposure for the fund. In contrast, employers participating in the Retro Program make payments under a more complicated, three-part scheme for any given year of coverage, and coverage under this method invokes a ten-year stream of payments for each covered year. Part one is a semiannual premium in the coverage year at a substantially reduced rate compared to the base-, group-, or experience-rated premiums. Part two consists of a series of annual adjustments in subsequent years, under which the employer reimburses the bureau for amounts paid for claims related to the covered year. The third part-payment for the covered year is a final adjustment paid at the end of the ten-year evaluation period. This final payment covers any claims paid from the fund during the ten-year evaluation period that were not covered by the annual adjustment payments and, in addition, estimates a reserve for future fund exposure to claims filed during the covered year.

{¶ 12} "Employers may switch from one insurance option to another within the state fund or may abandon current state-fund coverage to become self-insured. An employer departing from the Retro Program, however, will continue to pay its annual and final adjustment payments through the remainder of the ten-year period related to each covered year of participation in the Retro Program, whether the employer leaves the Retro Program to select another state-fund premium option or abandons current-year state-fund coverage to become self-insured." *Frisch's Restaurants, Inc. v. Conrad,* 170 Ohio App.3d 578, 2007-Ohio-545, 868 N.E.2d 689, ¶ 4–5.

{¶ 13} The administrator determined that only those employers who were current state fund employers would be defined as subscribers to the fund and, thereby, eligible for the rebates. Appellants contend that they were current Retro Program subscribers to the state fund despite their self-insured status because they were obligated to make Retro Program adjustment payments—or "look-back" payments—during the applicable rebate periods.[4] Even though

---

4. Appellant Peck Hannaford & Briggs switched to group-rated, and not self-insured status, and did receive rebates on its group-rated premiums. Thus, it remained a state-fund employer. Peck

these obligations were incurred in and for prior coverage years, appellants nevertheless argue that they were "dual-status" employers during the time in question. In other words, they contend that they qualified as both self-insured employers and state fund employers because they were still making Retro Program payments to the bureau—even though those payments were for prior coverage-year obligations.

{¶ 14} It is apparent that the cost for a coverage year under the Retro Program is not fully paid during the coverage year. The Retro Program is aptly named because the employer pays part of the costs of coverage retrospectively, that is, after the coverage year, when the extent of the actual costs resulting from coverage-year injuries becomes better known. Because some of the coverage-year premium are paid in arrears—in fact, up to ten years after the coverage year ends—an employer who is no longer a current state fund employer can still be making payments to the state fund to cover its workers' compensation costs incurred in one or more prior coverage years from the time when the employer was participating in the state fund for Retro Program coverage.

{¶ 15} Hence, appellants' argument that they are still Retro Program subscribers to the state fund because they are making payments to the state fund for obligations incurred in prior coverage years is unavailing. The trial court and the court of appeals properly rejected this argument.

{¶ 16} With respect to decisions of the bureau, we have stated: "It is axiomatic that if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme." *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad* (2001), 92 Ohio St.3d 282, 287, 750 N.E.2d 130. Further, we have "implicitly recognized that no set of statutes and administrative rules will answer each and every administrative concern. * * * When agencies promulgate and interpret rules to fill these gaps, as they must often do in order to function, 'courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command.' * * * We accord due deference to the [Bureau's] interpretation, so long as it is reasonable." Id. at 289, 750 N.E.2d 130, quoting *Swallow v. Indus. Comm.* (1988), 36 Ohio St.3d 55, 521 N.E.2d 778.

{¶ 17} With respect to this case, former R.C. 4123.32(A) plainly afforded the administrator discretion in issuing rebates from excess surplus. Because the

---

Hannaford & Briggs seeks rebates on the Retro Program look-back payments it made on and after January 1, 1999.

term "subscriber" was undefined by the statute, the administrator was authorized to define the term "in a reasonable manner based upon a reasonable construction of the statutory scheme." *Northwestern Ohio Bldg. & Constr. Trades Council,* 92 Ohio St.3d at 287, 750 N.E.2d 130. The administrator's promulgation of former Ohio Adm.Code 4123–17–10, providing the administrator discretion to define eligibility, is a reasonable construction of the broad discretion granted to the administrator by former R.C. 4123.32(A). Further, the administrator acted reasonably in relating the rebates to the coverage year for which the rebates were authorized. By doing so, the administrator afforded rebates to those employers whose risk was insured by the state fund for the particular coverage year in which he determined there was an excess surplus in the fund. Similarly, in the case of appellant Peck Hannaford & Briggs, while the administrator granted a reduction for the Retro premiums to be paid in the coverage year, he refused to extend the discounts to the annual and final adjustments—or look-back premiums—which were due for prior years' coverage. This application of the statute by the administrator was reasonable, and we afford it due deference.

{¶ 18} Appellants also assert that our decision in *Hoffman v. State Med. Bd. of Ohio,* 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, dictates that we invalidate the administrator's definition of "subscriber." In *Hoffman,* we held that an administrative rule issued by the state medical board was invalid because it conflicted with a statute enacted by the General Assembly covering the same subject matter. Id. at syllabus. Appellants cite that holding and argue that in this case, in the same vein as *Hoffman,* the bureau's rule and the administrator's definition of "subscriber" conflict with former R.C. 4123.32(A). We disagree. In fact, we find that the bureau's rule and the administrator's definition of "subscriber" are consistent with the purpose and intent of former R.C. 4123.32(A). As we noted in *Hoffman,* " '[r]ules promulgated by administrative agencies are valid and enforceable unless unreasonable or in conflict with statutory enactments covering the same subject matter.' " Id. at ¶ 17, quoting *State ex rel. Curry v. Indus. Comm.* (1979), 58 Ohio St.2d 268, 269, 12 O.O.3d 271, 389 N.E.2d 1126. Because there is no conflict, we find that *Hoffman* actually supports the administrator's position.

{¶ 19} Finally, the administrator argued in the trial court that each appellant had signed a waiver agreeing not to contest the administrator's decisions with respect to rebates in exchange for not paying a buy-out fee to switch coverage status. The administrator argues that he agreed to waive the buy-out fee because of the surplus in the fund and, thus, appellants received a significant benefit of the fund surplus even though they did not specifically receive rebates.[5]

---

5. For example, Frisch's had considered switching categories in 1992, but it decided not to because the buy-out fee would have been roughly $6 million.

{¶ 20} The trial court, however, found that the waiver issue was moot in light of its conclusion that the administrator had not abused his discretion in defining which employers were subscribers to the state insurance fund; therefore, the trial court did not decide the waiver. Similarly, although it was briefed and argued by the parties in this court, we need not address the purported waivers, because we likewise affirm the administrator's determination of rebate eligibility.

## Conclusion

{¶ 21} The court of appeals correctly held that the administrator did not abuse his discretion in determining which employers were eligible for the rebates in question. The judgment of the court of appeals is, therefore, affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

---

Scheuer, Mackin & Breslin, L.L.C., and Robert S. Corker; and Kegler, Brown, Hill & Ritter and Thomas W. Hill, for appellants.

Nancy Hardin Rogers, Attorney General, William P. Marshall, Solicitor General, Elise Porter and Michael Dominic Meuti, Deputy Solicitors, and Gerald H. Waterman, Assistant Attorney General, for appellee.