DECISION
{¶ 1} Relator, RMS of Ohio, Inc., commenced this original action in mandamus seeking an order compelling respondent, Ohio Bureau of Workers' Compensation ("bureau"), to vacate its order denying relator's R.C. 4123.291 protest of the bureau's determination that manual classification Nos. 8861 and 9110 be discontinued and replaced by manual classification No. 8835, and to enter an order restoring manual classification Nos. 8861 and 9110 to relator's payroll.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Relying primarily upon State ex rel. Ohio Aluminum Industries, Inc. v. Conrad,97 Ohio St.3d 38, 2002-Ohio-5307, and State ex rel. ProgressiveSweeping Contrs., Inc. v. Ohio Bur. of Workers' Comp. (1994),68 Ohio St.3d 393, 396, the magistrate determined that the bureau did not abuse its discretion by reclassifying relator under manual classification No. 8835 even though relator's risk does not precisely correspond with this risk classification. Noting the wide range of discretion given the bureau with respect to occupational classifications, the magistrate found that the bureau's reclassification of relator's risk was not arbitrary, capricious, or discriminatory. Therefore, the magistrate has recommended that we deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision, essentially arguing that its risk more closely corresponds to manual classification Nos. 8861 and 9110, rather than manual classification No. 8835. Relator contends that because the services relator provides are consistent with the activities described in classification Nos. 8861 and 9110, those classifications should apply even though relator does not provide those services in an institutional setting.
 {¶ 4} Ohio law requires that the administrator of the bureau classify occupations and industries according to the hazard they present. R.C. 4123.29. The bureau is afforded a wide range of discretion in assigning occupational classifications. Conrad,
supra, at 17, 20 (bureau afforded wide range of discretion in dealing with difficult problem of occupational classifications). Judicial intervention is warranted only when the classification is arbitrary, capricious, or discriminatory. Progressive,
supra, at 396.
 {¶ 5} Relator provides in-home homemaker/personal care services to persons with mental retardation or developmental disabilities. The services include meal preparation, laundry, light housekeeping, assistance with bathing, bathroom needs and dressing, assistance with self-administered medications, and assistance with grocery shopping. Relator does not provide medical services or therapies.
 {¶ 6} It would appear that relator's business operations do not fall squarely within any of the manual classification numbers at issue here. Manual classification Nos. 8861 and 9110, those desired by relator, are titled "Charitable or Welfare Organization — Professional Employees and Clerical and Charitable or Welfare Organization — All Other Employees and Drivers." These classifications are applicable to institutions that provide charitable or welfare assistance such as sleeping accommodations, meals, counseling, education, training and employment to among others, needy persons, mentally, physically or emotionally handicapped persons, in institutional settings such as group homes, temporary shelters, halfway houses, or rescue missions. Relator does not claim to be a charitable or welfare organization nor does it operate group homes, temporary shelters, halfway houses, or rescue missions.
 {¶ 7} On the other hand, manual classification No. 8835 is titled "Nursing-Home Health, Public, and Traveling-All Employees." It is applicable to both public and non-profit making organizations engaged in providing health care services or homemaker services in the homes of individual patients, including preparation of meals, performing light housekeeping chores, providing child care and companionship for the infirm or elderly as well as a degree of nursing services or other physical assistance as needed by these individuals. As previously noted, relator does not provide any in-home medical services or therapies.
 {¶ 8} Because relator's business operations are consistent with aspects of both manual classification Nos. 8861/9110, and 8835, but do not fall squarely within any of those classifications, we find that the bureau did not abuse it discretion in exercising its judgment. The Supreme Court of Ohio has long recognized the experience of the state agencies' statisticians and actuaries, whose jobs are to classify occupations and industries and their respective hazards. Stateex rel. The Reaugh Constr. Co. v. Indus. Comm. (1928),119 Ohio St. 205. Accordingly, the courts give due deference to the classifications made by the state agency entrusted to make such assignments. State ex rel. McLean v. Indus. Comm. (1986),25 Ohio St.3d 90, 92. Because manual classification No. 8835 expressly applies to in-home homemaker services, and because we must give considerable discretion to the bureau in this area, we conclude that the bureau's decision is not arbitrary, capricious, or discriminatory. The bureau's order reflects a reasonable exercise of discretion in circumstances where relator's business does not fall squarely within any of the listed classifications. Therefore, we overrule relator's objections.
 {¶ 9} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. RMS of Ohio, Inc., : :
Relator, : :
v. : No. 05AP-301 :
The Ohio Bureau of Workers' : (REGULAR CALENDAR) Compensation, : :
Respondent. : :
 MAGISTRATE'S DECISION Rendered on November 30, 2005 Gibson Robbins-Penniman, and J. Miles Gibson, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent.
 IN MANDAMUS {¶ 10} In this original action, relator, RMS of Ohio, Inc. ("RMS"), requests a writ of mandamus ordering respondent The Ohio Bureau of Workers' Compensation ("bureau") to vacate its order denying relator's R.C. 4123.291 protest of the bureau's determination that manual classification numbers 8861 and 9110 be discontinued and replaced by manual classification number 8835, and to enter an order restoring manual classification numbers 8861 and 9110 to relator's payroll.
Findings of Fact:
 {¶ 11} 1. RMS is a state-fund employer providing primarily homemaker/personal care services to the mentally retarded and developmentally disabled ("MRDD") at their respective private residences. The services are not provided in institutional settings such as group homes, shelters, halfway houses, or rescue missions. The services include meal preparation, laundry, light housekeeping, assistance with bathing, bathroom needs and dressing, assistance with self-administered medications, and assistance with grocery shopping. RMS employees also accompany their clients or customers to medical appointments but do not provide any medical services or therapies.
 {¶ 12} 2. In November 2002, the bureau conducted an audit at RMS for the period July 1, 2000 through June 30, 2002.
 {¶ 13} 3. At the time of the audit, and for a period of approximately 12 years earlier, RMS reported its payroll to the bureau under manuals 8861 ("Charitable or Welfare Organizations — Professional Employees Clerical") and 9110 ("Charitable or Welfare Organizations — All Other Employees Drivers").
 {¶ 14} 4. Subsequent to completion of the audit, RMS was notified by the bureau that manuals 8861 and 9110 were being prospectively discontinued for RMS's payroll and that manual 8835 ("Nursing-Home Health, Public, and Traveling-All Employees") would be applied to future reported payroll.
 {¶ 15} 5. The bureau's reclassification of RMS's payroll to manual 8835 dramatically increased RMS's premium paid to the bureau. Under manuals 8861 and 9110, the base rate was $3.13 per $100 of payroll. Under manual 8835, the base rate is $7.39 per $100 of payroll.
 {¶ 16} 6. By letter dated April 11, 2003, RMS protested the bureau's manual classification change. In its protest letter, RMS stated that "the original manual classifications were correct." RMS complained that it had information that other employers who provide the same services as RMS continued to report payroll under manuals 8861 and 9110. RMS pointed out that it "provides almost no nursing or medical assistance to its consumers."
 {¶ 17} 7. The RMS protest prompted a January 8, 2004 memorandum from risk supervisor Dave Patti to the bureau's adjudicating committee. The memorandum, captioned "Statement of Facts," states:
An audit was performed on the above employer on 11-18-02 for the periods 07-01-00 through 06-30-02. A letter of protest was sent to the Columbus Office on 04-11-2003 disputing manual changes made due to the audit.
The Audit Review department determined that operating manuals 8861 (Charitable or Welfare Organizations — Professional Employees Clerical) and 9110 (Charitable or Welfare Organizations — All Other Employees Drivers) should be discontinued and replaced with operating manual 8835 (Nursing-Home Health, Public, and Traveling-All Employees). This employer primarily provides supported living and residential services to persons with MR/DD, as indicated in the audit and in the appeal letter. Although manuals 8861/9110 are somewhat similar to manual 8835, the reason the decision was made to change to 8835 is based on several factors.
First, manuals 8861/9110 tend to be for an umbrella organization (i.e. United Way) that is typified by some type of an institutional building such as a halfway house, a rescue mission, a temporary shelter, or a home for youths or physically, mentally or emotionally handicapped clients. This business primarily sends out support care specialists to their clients [sic] residential homes and does not primarily function out of an institutional building.
Second, the duties carried out by the support care specialists are to provide daily living assistance to these individuals in the form of meal preparation, laundry, housekeeping, etc. Manual 8835 on page 229 of the Scopes manual specifically states, "Code 8835 is also applicable to both public and nonprofit-making organizations engaged in providing homemaker services. The services typically provided include preparation of meals, performing light housekeeping chores, providing child care and companionship for the infirm and elderly as well as a degree of nursing services or other physical assistance as needed by these individuals."
The two factors above led to the determination that manual 8835 is more reflective of the services being provided by this organization as opposed to manuals 8861/9110, which are more geared at rescue missions, halfway houses, temporary shelters. I do not dispute the manual determination decision made by the Audit Review department. I'd also like to note that the manual changes were made prospectively on this account.
 {¶ 18} 8. Following a February 26, 2004 hearing before a three-person ad-judicating committee, the bureau's adjudicating committee issued an order stating:
The facts of this case are as follows: An audit was performed on this employer for payroll periods July 1, 2000 through June 30, 2002. As a result of the audit, the employer was reclassified from Code 8861, Welfare Social Service Organizations Professional Employees, and Code 9110, Welfare Social Service Organizations Non-Professional Employees, to Code 8835 Nursing — Home Health, Public and Traveling — All Employees.
* * *
The employer's representative stated Code 8835 is not correct. The employees work with MRDD providing home-maker services. They provide skills training to the individuals that live in a group home setting. [Sic.] Codes 8861 and 9110 are for halfway homes and group home settings. The represent-ative feels the hazards to which the employees are exposed are most like those contemplated by 8861 and 9110.
The representative for BWC stated the employees provide daily care systems to the MRDD residents. The services provided to these individuals are best described by 8835.
NCCI [National Council on Compensation Insurance, Inc.] classifies operations by the nature of the business. Based on the information provided by NCCI, Code 8835 best describes the operations of this employer. The NCCI representative stated these types of employers are in the business of providing homemaker services; they are not a charitable or welfare organization.
Based on the testimony and the information presented to the Committee, it is the DECISION of the Adjudicating Committee to deny the employer's request and affirm the audit findings of Risk Field Services.
(Emphasis sic.)
 {¶ 19} 9. RMS administratively appealed the order of the adjudicating committee to the administrator's designee pursuant to R.C. 4123.291(B).
 {¶ 20} 10. The administrator's designee heard relator's appeal on December 7, 2004. The hearing was recorded and transcribed for the record. At the hearing, RMS presented unsworn testimony from Gary Brown, a certified public accountant ("CPA"), and Jonathan Hollander, who is employed by RMS as its "State Finance Director."
 {¶ 21} 11. At the hearing, Brown testified that, as a CPA, he provides consulting services to companies that provide services to mentally handicapped individuals. He has consulted for over 100 Medicaid providers in the state of Ohio that provide services to MRDD individuals. As a consultant, he has become familiar with the bureau's manual codes assigned to those providers.
 {¶ 22} At the hearing, Brown testified that he sent a letter dated March 31, 2003, to RMS for whom he consults. The letter states:
As requested, I have researched Workers Compensation classifications for 26 of our clients that provide Supported Living and Residential Services in licensed homes to persons with MR/DD. Of the 26 providers, 23 are classified under 9110RN (Charitable or Welfare Organization — All Other Employees and Drivers). I believe the other 3, which are classified under 8829RN (Convalescent or Nursing Home — All Employees) are miss classified [sic] as you are.
 {¶ 23} 12. At the hearing, Hollander testified that he was present when the bureau audit was conducted at RMS's office in November 2002. RMS was given a list of records that it was expected to produce for the audit. According to Hollander, RMS produced:
* * * [P]rimarily payroll records, also including our semi-annual reports, DP21s, any worksheets, calculations. We also provided state unemployment tax forms, 941 forms. W-3's and W-2 information was available.
 {¶ 24} According to Hollander, he was "not aware" as to whether the auditors had reviewed any job descriptions and he was not asked by the auditors about job descriptions of RMS employees. Hollander was also "unaware" of whether the auditors had visited any of the homes of RMS clients or customers.
 {¶ 25} 13. At the hearing, Stephanie Robson of the bureau's risk department testified. During the hearing, Robson was asked by the bureau's counsel to explain why the bureau reclassified RMS to manual 8835. Robson stated:
* * * As discussed earlier, NCCI classifies by the nature of the business, what services they provide. Under the charitable classification, we include umbrella organizations. An example would be united way. These would be different organizations that provide a multiple — a variety of services for a certain segment of the population. Also included are temporary shelters, halfway houses, training centers, group homes are included in here.
It's BWC's position that RMS is not operating a group home; they are providing services to residential clients in their own home. They go into residences and do personal care, provide transportation. Under the homemaker 8835, it does say nursing, home health classification. It includes homemaker services. It goes on, as was mentioned earlier, applies to nonprofit organizations providing home health services to families with children. And it does say convalescent, aged, and disabled persons. And these are mentally-disabled persons and the services are being provided in their home. The homemaker services include preparation of meals, housekeeping, physical assistance, and companionship.
It's BWC's position that that's exactly what your company is providing; you're going into your client's home and providing home health care for them.
 {¶ 26} 14. Following the December 7, 2004 hearing, the administrator's designee issued an order stating:
The Administrator's Designee adopts the statement of facts contained in the order of the Adjudicating Committee.
Based on the testimony and other evidence presented at the hearing, the Administrator's Designee affirms the decision, findings, and rationale set forth in the order of the Adjudicating Committee.
 {¶ 27} 15. On March 28, 2005, relator, RMS of Ohio, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 28} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} Some three years ago, in State ex rel. Ohio AluminumIndustries, Inc. v. Conrad, 97 Ohio St.3d 38, 2002-Ohio-5307, at ¶ 17, 20, the Supreme Court of Ohio decided a case involving an employer's mandamus challenge to the bureau's manual reclassification that resulted in a higher premium to the employer. In Ohio Aluminum, the court set forth law applicable to the instant case:
Section 35, Article II of the Ohio Constitution authorizes the board to "classify all occupations, according to their degree of hazard * * *." Implemented by what is now R.C. 4123.29(A)(1), the result is the Ohio Workers' Compensation State Fund Insurance Manual. The manual is based on the manual developed by NCCI and has hundreds of separate occupational classifications. See Ohio Adm. Code 4123-17-04, Appendix A. It also specifies the basic rate that an employer must pay, per $100 in payroll, to secure workers' compensa-tion for its employees. See Ohio Adm. Code4123-17-02(A).
* * *
* * * "[T]he bureau is afforded a `wide range of discretion' in dealing with the `difficult problem' of occupational classifica-tion." State ex rel. Roberds, Inc. v. Conrad (1999),86 Ohio St.3d 221, 222, * * * quoting State ex rel. McHugh v.Indus. Comm. (1942), 140 Ohio St. 143, 149 * * *. Thus, we have "generally deferred to the [bureau's] expertise in premium matters" and will find an abuse of discretion "only where classification has been arbitrary, capricious or discriminatory."State ex rel. Progressive Sweeping Contrs., Inc. v. Ohio Bur. ofWorkers' Comp. (1994), 68 Ohio St.3d 393, 396[.] * * *
 {¶ 30} In State ex rel. Progressive Sweeping Contrs., Inc.v. Bur. of Workers' Comp. (1994), 68 Ohio St.3d 393, 396, the Supreme Court of Ohio pronounced:
Judicial intervention in premium matters has traditionally been warranted only where classification has been arbitrary, capricious or discriminatory. Id.; [State ex rel. Minutemen,Inc. v. Indus. Comm. (1991), 62 Ohio St.3d 158]. See, generally, 4 Larson, Workmen's Compensation Law (1990), Section 92.67. Given this high threshold, we have been — and will continue to be — reluctant to find an abuse of discretion merely because the employer's actual risk does not precisely correspond with the risk classification assigned.
 {¶ 31} However, in Progressive Sweeping, the court issued a writ of mandamus against the bureau. The court explained:
* * * The bureau should not be permitted under the guise of administrative convenience to shoehorn an employer into a classification which does not remotely reflect the actual risk encountered.
Id.
 {¶ 32} The parties have stipulated to pertinent pages of the January 2003 addition of the Scopes Manual published by NCCI.
 {¶ 33} The scope of classification codes 8861 (Charitable or Welfare Organizations — Professional Employees Clerical) and 9110 (Charitable or Welfare Organizations — All Other Employees and Drivers) is described in the Scopes Manual:
SCOPE Codes 8861 and 9110 are applicable to institutions that provide charitable or welfare assistance for clients such as needy persons; mentally, physically or emotionally handicapped persons; abused spouses; and those who may be working off drug- or alcohol-related sentences. Charitable or welfare organizations may offer these individuals sleeping accommodations, meals, counseling, education, training and employment. Risks classifiedto Codes 8861 and 9110 may offer limited medical services such asfirst aid, but these operations will not provide significantmedical treatment typically found in hospitals.
* * *
The following typify operations of a charitable or welfarenature that are contemplated by Codes 8861 and 9110:
1. Homes for youths or physically, mentally or emotionally handicapped clients: House "parents" or counselors may live with a limited number of clients in a group home. (House parents or counselors are classified based on the nature of their duties. Refer to the description of job duties and the appropriate classifications applicable to same later in this scope.) The clients are taught how to live with one another and perform daily living chores such as laundry, house-keeping and meal preparation. The clients may be sent to another location during the day to work, receive occupational and/or scholastic training or receive medical or psychiatric evaluation.
2. Temporary shelters for abused persons: These homes provide temporary shelter and food for those involved in physically or mentally abusive or antagonistic relationships. Counseling is often provided. Medical treatment when necessary is provided by others.
3. Halfway houses: These operations provide rehabilitation services to those who have recently left institutional life and require a period of readjustment to the outside world.
4. Rescue missions: These operations may provide food and shelter for transient clients who may only be in need of a hot meal or temporary shelter.
(Emphasis sic.)
 {¶ 34} The January 8, 2004 memorandum or "Statement of Facts" adopted by the administrative designee presents the following analysis of manuals 8861 and 9110:
First, manuals 8861/9110 tend to be for an umbrella organization (i.e. United Way) that is typified by some type of an institutional building such as a halfway house, a rescue mission, a temporary shelter, or a home for youths or physically, mentally or emotionally handicapped clients. This business [RMS] primarily sends out support care specialists to their clients [sic] residential homes and does not primarily function out of an institutional building.
 {¶ 35} There is no dispute here that relator does not provide homemaker/personal care at an institutional building.
 {¶ 36} That relator provides the homemaker/personal care services at the individual residences of its clients rather than at an institutional building was the first of two factors set forth by the bureau to explain its discontinuance of manuals 8861 and 9110 for relator's payroll.
 {¶ 37} The scope of classification code 8835 (Nursing-Home Health, Public, and Traveling-All Employees) is described in the scope's manual:
SCOPE Code 8835 is assigned to both public and privately owned enterprises engaged in furnishing nursing or health care services in the homes of individual patients. The employees rendering such services are mostly registered nurses or licensed practical nurses. Employees of this nature are principally engaged in administering medications and injections, checking vital signs of patients, giving physical therapy treatments, etc.
The assignment of the homemaker service classification, Code 8835, is also applicable to both public and non-profit-makingorganizations engaged in providing home-maker services. The services typically provided include preparation of meals, performing light housekeeping chores, providing child care and companionship for the infirm or elderly as well as a degree of nursing services or other physical assistance as needed by these individuals.
(Emphasis sic.)
 {¶ 38} The January 8, 2004 memorandum or statement of facts adopted by the administrative designee presents the following analysis in manual 8835:
Second, the duties carried out by the support care specialists are to provide daily living assistance to these individuals in the form of meal preparation, laundry, housekeeping, etc. Manual 8835 on page 229 of the Scopes manual specifically states, "Code 8835 is also applicable to both public and nonprofit-making organizations engaged in providing homemaker services. The services typically provided include preparation of meals, performing light housekeeping chores, providing child care and companionship for the infirm and elderly as well as a degree of nursing services or other physical assistance as needed by these individuals."
 {¶ 39} Clearly, the scope of 8835 tracks (in the second paragraph) the description of services that RMS provides to its MRDD clients. Undisputedly, RMS provides "homemaker services" as that term is used in code 8835. It can be said, without dispute, that the RMS services "typically provided include preparation of meals, performing light housekeeping chores," and "other physical assistance as needed" as described in code 8835. Thus, the statement of facts provides a rationale for the bureau's use of 8835 for relator's payroll. That rationale is the second factor given by the bureau for the manual reclassification.
 {¶ 40} Nevertheless, relator argues that the first paragraph of 8835's scope is inapplicable to it because relator does not furnish "nursing or healthcare services" and it provides no "registered nurses or licensed practical nurses" as described in the first paragraph.
 {¶ 41} Without the second paragraph of 8835's scope, relator's argument might have merit. However, it is apparent that the bureau's statement of facts invokes the second paragraph of the scope rather than the first paragraph. Thus, relator's argument that it does not furnish nursing or healthcare services seems to miss the mark.
 {¶ 42} With respect to the second paragraph of the 8835's scope, relator argues that 8835 does not fit its situation because it provides no services to "the infirm and elderly" and does not provide a "degree of nursing services."
 {¶ 43} The magistrate recognizes, as the bureau apparently did, that the second paragraph of 8835's scope is not an exact fit. However, reflecting the pronouncement of the court inProgressive Sweeping, this court should be reluctant to find an abuse of discretion merely because relator's actual risk does not precisely correspond with the risk classification assigned.
 {¶ 44} To summarize, based upon the administrator's designee's adoption of the January 8, 2004 statement of facts, it is clear that the bureau set forth upon the record a two-fold analysis explaining why it determined that manuals 8861 and 9110 should be discontinued and why manual 8835 is more appropriate.
 {¶ 45} Viewing the scope of the three manuals at issue, in light of the services relator provides to its MRDD clients in their respective individual homes, this magistrate does not find the bureau's reclassification to be arbitrary, capricious, or discriminatory. See Ohio Aluminum, supra.
 {¶ 46} Relator argues here that the bureau failed to analyze the degree of hazard by allegedly reviewing only financial records and failing to observe any of the RMS employees in the performance of their jobs at the residences of their clients. Relator's argument lacks merit.
 {¶ 47} Based upon the undisputed fact that relator does not provide homemaker services at institutional buildings and relator's own description of the duties of its homemaker employees, the bureau determined that relator did not fit the scope of manuals 8861 and 9110 and that the scope of manual 8835 was an appropriate, better fit. This determination was based upon the written scopes of the three manuals at issue.
 {¶ 48} There was no need for the bureau auditors to visit the private residences of relator's clients. Moreover, if there was anything of further evidentiary value to be found at a client's home, relator could have presented the evidence administratively, which it chose not to do. The bureau briefly explained its determination which has not been shown to be arbitrary, capricious, or discriminatory.
 {¶ 49} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 s/s Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE