[Cite as *May v. PSI Affiliates, Inc.*, 2012-Ohio-3554.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SUE ELLEN MAY

    Appellee

    v.

PSI AFFILIATES, INC.

    Defendant

    and

AKRON BOARD OF EDUCATION

    Appellant

C.A. No.    26179

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2003 04 2383

DECISION AND JOURNAL ENTRY

Dated: August 8, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** After the State Teachers Retirement System Board determined that Susan May was a member of the system, the Akron Board of Education sought mandamus relief from the Summit County Common Pleas Court. The common pleas court determined that the school board was not entitled to relief because there was some evidence in the administrative record to support the retirement-system board's decision. The school board has appealed, arguing that the common pleas court incorrectly upheld the retirement-system board's decision, incorrectly granted summary judgment to Ms. May, and incorrectly struck its motion to take judicial notice.

We reverse because the record does not contain some evidence that Ms. May met the requirements for membership in the state teachers retirement system.

## BACKGROUND

{¶2}   In July 2001, the school board entered into a contract with PSI Affiliates to provide school nurses and health aides for a number of its schools for the coming school year. PSI Affiliates, in turn, hired Ms. May to work as a nurse supervisor in some of the schools. After starting her job, Ms. May asked PSI Affiliates and the school board whether she was eligible to become a member of the state teachers retirement system. When they did not respond to her inquiries, she contacted the retirement system directly and was told that she qualified. PSI Affiliates fired her shortly thereafter.

{¶3}   Ms. May filed a complaint against PSI Affiliates, the school board, and some of their employees, requesting damages and declaratory relief. While her case was pending, the school board asked the retirement-system board for a determination of whether Ms. May and the other employees PSI Affiliates had hired under its contract with the school board were members of the system. Regarding Ms. May, the retirement-system board concluded that she was a member under Section 3307.01(C) of the Ohio Revised Code. The school board subsequently filed a claim against the retirement-system board in Ms. May's case, seeking a writ of mandamus to prevent the retirement-system board from enforcing its decision. The common pleas court, however, upheld the retirement-system board's decision. It also granted summary judgment to the retirement-system board and Ms. May. The school board has appealed, assigning three errors.

STATE TEACHERS RETIREMENT SYSTEM ELIGIBILITY

{¶4} The school board's first assignment of error is that the common pleas court incorrectly upheld the retirement-system board's determination that Ms. May can participate in the state teachers retirement system. Its second assignment of error is that the court incorrectly granted summary judgment to Ms. May. Because these assignments of error raise similar issues, we will address them together.

{¶5} Under the version of Section 3307.01(C) of the Ohio Revised Code that was effective at the time of the contract, "the membership of the state teachers retirement system . . . consist[s] of all teachers and contributors as defined in divisions (B) and (D) of this section . . . ." R.C. 3307.01(C), effective July 13, 2000. Section 3307.01(B) defines "[t]eacher." Under that section, if there is any doubt regarding whether an individual is a teacher, "the state teachers retirement board shall determine whether [the] person is a teacher, and its decision shall be final." R.C. 3307.01(B). At the time that Ms. May sought membership in the retirement system, the definition of teacher contained six categories, three of which, Sections 3307.01(B)(1), (4), and (5), are potentially relevant to Ms. May.

{¶6} Although parties do not have the right to appeal a decision by the retirement-system board under Section 3307.01(B), the Ohio Supreme Court has determined that mandamus is an appropriate remedy to seek relief from its decisions. *State ex rel. Grein v. Ohio State Highway Patrol Ret. Sys.*, 116 Ohio St. 3d 344, 2007-Ohio-6667, ¶ 6; *State ex rel. Pipoly v. State Teachers Ret. Sys.*, 95 Ohio St. 3d 327, 2002-Ohio-2219, ¶ 14 ("[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.").

{¶7} "In order to be entitled to a writ of mandamus, [the school board] must establish that: (1) [it] has a clear legal right to the relief prayed for, (2) [the retirement-system board] is under a clear legal duty to perform the act, and (3) [the school board] has no plain and adequate remedy in the ordinary course of law." *State ex rel. McMaster v. School Employees Ret. Sys.*, 69 Ohio St. 3d 130, 133 (1994). The central question in this case is whether the school board had a clear legal right to have the retirement-system board declare that Ms. May is not a member of the state teachers retirement system. "A clear legal right exists [if] the board . . . enter[s] an order which is not supported by 'some evidence.'" *Kinsey v. Bd. of Trs. of Police & Firemen's Disability and Pension Fund*, 49 Ohio St. 3d 224, 225 (1990).

{¶8} We note that in reviewing Section 3307.01 we "must give due deference to an administrative interpretation [of a statute] formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." *State ex rel. McLean v. Indus. Comm'n*, 25 Ohio St. 3d 90, 92 (1986); *see also Lorain City Sch. Dist. Bd. of Educ. v. State Employment Relations Bd.*, 40 Ohio St. 3d 257, 260 (1988) (concluding that courts had to give deference to administrative body's interpretation of statute "[o]therwise, there would be no purpose in creating a specialized administrative agency . . . to make determinations."). We also note that "pension provisions . . . must be liberally construed in favor of the public employees and their dependents who the statutes were designed to protect." *State ex rel. Mallory v. Pub. Employees Ret. Bd.*, 82 Ohio St. 3d 235, 240 (1998).

OHIO REVISED CODE SECTION 3307.01(B)(1)

{¶9} At the time of the contract, the definition of teacher under Section 3307.01(B) of the Ohio Revised Code included "[a]ny person paid from public funds and employed in the

public schools of the state under any type of contract described in section 3319.08 of the Revised Code in a position for which the person is required to have a license issued pursuant to sections 3319.22 to 3319.31 of the Revised Code[.]" R.C. 3307.01(B)(1), effective July 13, 2000. This Court has held that the definition of teacher under Section 3307.01(B)(1) includes "any person who . . . (1) is paid from public funds; (2) is employed in the public schools of the state; (3) is under any type of contract described in R.C. 3319.08; and (4) occupies a position for which a certificate is required under R.C. 3319.22 to 3319.31." *Bd. of State Teachers Ret. Sys. v. Cuyahoga Falls City Sch. Dist. Bd. of Educ.*, 26 Ohio App. 3d 45, 46 (9th Dist. 1985).

{¶10} In its brief, the school board has "assume[d] . . . that [Ms. May] was paid from public funds" and "that [she] was employed in a public school of the state." It has limited its argument to asserting that the record did not contain any evidence that Ms. May was employed "under any type of contract described in R.C. 3319.08" or that she "occupie[d] a position for which a certificate [was] required under R.C. 3319.22 to 3319.31." *Bd. of State Teachers Ret. Sys. v. Cuyahoga Falls City Sch. Dist. Bd. of Educ.*, 26 Ohio App. 3d 45, 46 (9th Dist. 1985); *see* R.C. 3307.01(B), effective July 13, 2000.

{¶11} Regarding whether Ms. May worked under a type of contract described in Section 3319.08 of the Ohio Revised Code, Section 3319.08(A) provided that "[t]he board of education of each city . . . shall enter into written contracts for the employment and reemployment of all teachers. . . . Contracts for the employment of teachers shall be of two types, limited contracts and continuing contracts." Section 3319.08(A)(3) defined "limited contract," in part, as "a contract for a term not to exceed five years." R.C. 3319.08(A)(3), effective July 13, 2000. A continuing contract, on the other hand, was defined as "a contract that remains in effect until the

teacher resigns, elects to retire, or . . . is terminated or suspended . . . ." R.C. 3319.08(B), effective July 13, 2000.

{¶12} The definition of "teacher," as that term is used in Section 3319.08, is found in Section 3319.09 of the Ohio Revised Code. "As used in sections 3319.08 to 3319.18, inclusive, of the Revised Code: (A) 'Teacher' means all persons licensed to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the state board of education requires licensure under Sections 3319.22 to 3319.31 of the Revised Code . . . ." R.C. 3319.09(A), effective Oct. 29, 1996. Accordingly, in order to qualify as a teacher under Section 3319.08, Ms. May had to be (1) "licensed to teach" and (2) employed in one of the specified positions. R.C. 3319.09(A).

{¶13} According to the administrative record, Ms. May worked in the Akron public schools as a school nurse supervisor. She, therefore, worked in a position for which the state board required licensure and satisfied the second part of Section 3319.09(A). There is no evidence in the record, however, to suggest that she was "licensed to teach." At the time of the contract, Section 3319.22 of the Ohio Revised Code empowered the "state board of education" to "adopt rules establishing the standards and requirements for obtaining temporary, associate, provisional, and professional educator licenses of any categories, types, and levels the board elects to provide." R.C. 3319.22(A) effective Sept. 28, 1999. Exercising that power, the state board of education created several kinds of licenses including the "provisional teacher license," the "provisional principal license," the "professional teacher license," the "professional pupil services license," the "professional administrator license," the "associate license," the "professional school business manager or the professional school treasurer license," the

"educational aide permit," and the "adult education permit." Ohio Adm. Code 3301-24-05, effective Jan. 1, 1998.

{¶14}  Of the types of licenses created by the state board of education, the one that was required of school nurses was the professional pupil services license. Ohio Adm. Code 3301-24-05(E)(1)(f).  It was issued to individuals "of good moral character" who had "completed an examination prescribed by the state board of education," who possessed a "Baccalaureate degree," and who were "license[d] to practice as a registered nurse . . . by the Ohio board of nursing." *Id.*  While there is no evidence in the administrative or common-pleas-court record to indicate that Ms. May had a professional pupil services license, because she was employed as a school nurse in a public school, we will assume that she did.  *See* R.C. 3313.68, effective Apr. 10, 2001 (limiting the school board's power to employing registered nurses who are "licensed as school nurses under section 3319.22 of the Revised Code.").

{¶15}  Although we must give deference to the retirement-system board's interpretation of Section 3307.01, it cannot reasonably be argued that a professional pupil services license is a "license[ ] to teach" under Section 3319.09(A), effective Oct. 29, 1996.  In rule 3301-24-05, the state board of education drew a distinction between teacher licenses and other forms of licenses and permits.  Unlike teacher licenses, which were "valid for teaching" children of various ages, the professional pupil services licenses were merely "valid . . . for working with learners at all levels." Ohio Adm. Code 3301-24-05(C), (E).  A teacher license also was not a prerequisite to a professional pupil services license like it was for a provisional principal license or professional administrator license.  *See* Ohio Adm. Code 3301-24-05(B), (F).

{¶16}  Because there is no evidence in the administrative record that Ms. May had a license to teach, her hiring could not have involved a "contract[ ] for the employment . . . of [a]

teacher" under Section 3319.08 of the Ohio Revised Code. Consequently, she was not "employed in the public schools under any type of contract described in section 3319.08" and, therefore, did not meet the definition of a teacher under Section 3307.01(B)(1), effective July 13, 2000.

OHIO REVISED CODE SECTION 3307.01(B)(4)

{¶17} Under the version of Section 3307.01(B)(4) of the Ohio Revised Code that was in effect at the time of the contract, the definition of teacher included "[a]ny person having a license issued pursuant to sections 3319.22 to 3319.31 of the Revised Code and employed in a public school in this state in an educational position, as determined by the state board of education, under programs provided for by federal acts or regulations and financed in whole or in part from federal funds, but for which no licensure requirements for the position can be made under the provisions of such federal acts or regulations[.]" The retirement-system board appears to have relied on this section in determining that Ms. May met the definition of teacher, explaining in its letter to the school board that the definition of teacher "includes any person having a license issued pursuant to sections 3319.22 to 3319.31 of the Revised Code and employed in a public school in this state in an educational position."

{¶18} To meet the definition of "[t]eacher" under the plain language of Section 3307.01(B)(4), an individual had to (1) have a license issued under Sections 3319.22 to 3319.31, (2) be employed in a public school in an educational position, (3) be employed under a program provided for by federal acts or regulations, and (4) be employed under a program that was financed in whole or in part by federal funds. Although the retirement-system board specifically found that Ms. May satisfied the first two requirements, it did not mention anything in its decision about the other requirements. This Court has reviewed the administrative record and

has been unable to find any evidence that Ms. May's employment as a school nurse was under a federal program that was at least partially funded by federal funds. The parties also did not direct the common pleas court or this Court to any federal acts or regulations regarding school nurses that were in effect at the time of the contract. Accordingly, we conclude that there was not "some evidence" in the record to support a determination that Ms. May was a teacher under Section 3307.01(B)(4).

OHIO REVISED CODE SECTION 3307.01(B)(5)

{¶19} In 2001, section 3307.01(B)(5) of the Ohio Revised Code defined "[t]eacher" as "[a]ny other teacher or faculty member employed in any school, college, university, institution, or other agency wholly controlled and managed, and supported in whole or in part, by the state or any political subdivision thereof, including Central state university, Cleveland state university, the university of Toledo, and the medical college of Ohio at Toledo." In this case, it is not disputed that Ms. May was employed in a school controlled, managed, and supported by the Akron school board. The question, therefore, is whether she was a "teacher" or "faculty member" under that section.

{¶20} In *State ex rel. Chavis v. Sycamore City School District Board of Education*, 71 Ohio St. 3d 26 (1994), the Ohio Supreme Court interpreted the definition of teacher under Section 3317.13(A)(2). That section provided that "[t]eacher means all teachers employed by the board of education of any school district." *Id*. at 30 (quoting R.C. 3317.13(A)(2)). Noting that the definition was "somewhat circular," the Court determined that the second use of the word teacher was "in its ordinary sense, not as a term of art." *Id*. It explained that the ordinary meaning of the word teacher is "one who teaches or instructs." *Id*. (quoting Black's Law Dictionary 1463 (6th ed. 1990)). Similar to that case, we conclude that, to the extent that Section

3307.01(B)(5) defined "[t]eacher" as a teacher, the second use of the word was in the ordinary sense of the word.

{¶21} The contract between PSI Affiliates and the school board detailed Ms. May's responsibilities as a school nurse supervisor. Under the agreement, Ms. May was required to "be knowledgeable in school health related procedures," "maintain overall responsibility for school health records," "direct, supervise and monitor all work done by the Health Aide," "maintain daily statistical records," "conduct appropriate follow-up conferences, paperwork, etc., as required (e.g., with psychologists, parents, teachers, principal)," "maintain current school health records," "submit written policies and procedures . . . describing the School Health Program," and "be properly attired in an appropriate lab coat."

{¶22} None of Ms. May's school-nurse supervisor duties required her to instruct or teach students. There also was no other evidence in the administrative record to suggest that she taught or instructed students. We, therefore, conclude that she was not a teacher under Section 3307.01(B)(5).

{¶23} Regarding whether Ms. May was a "faculty member," the contract between PSI Affiliates and the school board established that Ms. May was an employee of PSI Affiliates, not an employee of the school board. She also was not assigned to a specific school building, but performed her duties at a number of different schools. We conclude that there was no evidence in the administrative record to establish that Ms. May was a "faculty member employed in any school" under Section 3307.01(B)(5).

{¶24} The retirement-system board's conclusion that Ms. May was a teacher under Section 3307.01(B) and, therefore, a member of the system under Section 3307.01(C) was not supported by "some evidence." Accordingly, we conclude that the common pleas court

incorrectly determined that the school board was not entitled to a writ of mandamus. *State ex rel. McMaster v. School Employees Ret. Sys.*, 69 Ohio St. 3d 130, 133 (1994). The school board's first and second assignments of error are sustained. Its third assignment of error is moot and is overruled on that basis. *See* App. R. 12(A)(1)(c).

CONCLUSION

{¶25} The common pleas court incorrectly denied the school board's request for a writ of mandamus because there is no evidence in the administrative record to support the retirement-system board's determination that Ms. May was a teacher under Section 3307.01(C) of the Ohio Revised Code. The judgment of the Summit County Common Pleas Court is reversed.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.

MOORE, J.
DISSENTING.

{¶26} I would affirm the judgment of the trial court because it did not abuse its discretion in finding "some evidence" in the record to support STRB's determination that May is a "teacher" who qualifies for membership in STRS pursuant to R.C. 3307.01(B).

{¶27} The issue here hinges on the definition of "teacher" as provided in R.C. Chapter 3307, which governs the administration of STRS. "Under this system, it is readily apparent that the term 'teacher' must be defined in order to determine exactly who qualifies for membership in STRS." *State ex rel. State Teachers Retirement Bd. v. W. Geauga Local School Dist. Bd. of Edn.*, 131 Ohio App.3d 150, 158 (11th Dist.1998). For purposes of R.C. Chapter 3307, the word "teacher" is defined in R.C. 3307.01(B)(1) as "[a]ny person paid from public funds and employed in the public schools of the state under any type of contract described in section 3319.08 of the Revised Code in a position for which the person is required to have a license issued pursuant to sections 3319.22 to 3319.31 of the Revised Code[.]" Ohio courts have concluded that:

> [b]ased on a plain reading of the statute, there are four requirements that must be satisfied before an individual can be considered a teacher for purposes of STRS eligibility:

(1) the individual must be paid from public funds,

(2) the individual must be employed in the public schools of the state,

(3) the individual must be employed under any type of contract described in R.C. 3319.08, and

(4) the individual must occupy a position for which a certificate is required under R.C. 3319.22 to 3319.31.

*W. Geauga* at 159. Further, R.C. 3307.01(B) provides that, "[i]n all cases of doubt, *the state teachers retirement board shall determine whether any person is a teacher, and its decision shall be final*." (Emphasis added.)

{¶28} The application of this criteria to the present facts does not support the majority's conclusion that May is not a "teacher" pursuant to R.C. 3307.01(B)(1).

{¶29} In addressing this issue, the majority improperly focuses on the definition of "teacher" as defined in R.C. 3319.09(A), which is expressly applicable to R.C. 3319.08 to 3319.18. The plain language of R.C. 3307.01(B)(1) provides that, in order to qualify as a "teacher", the individual must be employed under "any type of contract described in section 3319.08 of the Revised Code." However, R.C. 3319.08 speaks only to the *type* of employment contract and not to the definition of "teacher" for purposes of STRS qualification. The majority suggests that in order to be considered a "teacher" for purposes of STRS eligibility, an individual must meet the definition of teacher set forth in R.C. 3307.01(B) *and* R.C. 3319.09(A).

{¶30} R.C. 3319.09(A) states that:

"[t]eacher" means all persons licensed to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the state board of education requires licensure under sections 3319.22 to 3319.31 of the Revised Code and employed in an educational position, as determined by the state board of education, under programs provided for by federal acts or regulations and financial in whole or in part from federal funds, but for which no licensure requirements for the position can be made under the provisions of such federal acts or regulations.

The majority concludes that, even if May qualifies as a "teacher" under R.C. 3307.01(B)(1), because she does not also qualify as a "teacher" under R.C. 3319.09(A), she is not eligible for enrollment in STRS. However, for the following reasons, I disagree.

{¶31} In *Wood v. Trotwood Madison Bd. of Edn.*, 2d Dist. No. CA 11836, 1990 WL 80622, \*2 (June 12, 1990), the Second District Court of Appeals held that the definition of "teacher" in R.C. 3319.09 is not applicable to R.C. 3317.13 and 3317.14 because the definition of "teacher" in R.C. 3319.09 is "expressly limited to Sections 3319.08 to 3319.18" and "does not extend to Chapter 3317."

{¶32} Similarly, there is no statutory language extending the definition of "teacher" in R.C. 3319.09(A) to Chapter 3307, as R.C. 3307.01(B) expressly provides its own definition of "teacher" for purposes of that Chapter. As such, the focus here should be on whether May fits the definition of "teacher" pursuant to R.C. 3307.01(B).

{¶33} As the majority correctly states, "[a] writ of mandamus may issue only where the [Akron Board of Education] shows (1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law." *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear legal right exists where the board abuses its discretion by entering an order which is not supported by 'some evidence.'" *Kinsey v. Bd. of Trustees of the Police and Firemen's Disability and Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990). As such, we must determine whether STRB's determination that May is a "teacher" pursuant to R.C. 3307.01(B), and eligible for retirement benefits through STRS, is supported by "some evidence."

{¶34} As stated above, in order to qualify as a "teacher" pursuant to R.C. 3307.01(B)(1), one must:

(1) be paid from public funds,

(2) be employed in the public schools of the state,

(3) be employed under any type of contract described in R.C. 3319.08, and

(4) occupy a position for which a certificate is required under R.C. 3319.22 to 3319.31.

{¶35} Here, the trial court found STRB's determination that May be permitted to participate in the STRS pension fund to be supported by "some evidence" because (1) May was paid from public funds, (2) May was employed in Akron public schools, (3) May was employed under a contract described in R.C. 3319.08, and (4) May's position as a registered nurse required a certificate under R.C. 3319.22 to 3319.31.

{¶36} The record indicates that the Akron Board of Education of the Akron Public Schools entered into contract number 608 with PSI Associates Affiliates, Inc. for school nurse/health aide services for Akron Public Schools. The contract includes provisions stating that: (1) monthly invoices shall be sent to the Akron Board of Education indicating the amount of hours or days for the invoice period, (2) the limited term would be from July 1, 2003, through June 30, 2004, and school nurses would be paid $23.63 per hour, with an option for renewal, (3) under R.C. 3307.01, any person performing work under this contract shall be considered a member of the STRS, and (4) PSI Associates Affiliates, Inc. shall provide proof of certification in the areas of CPR and basic First Aid.

{¶37} Based upon a careful review of the record, there is "some evidence" in the record that, pursuant to R.C. 3307.01(B)(1), May was: (1) paid with public funds, (2) employed in Akron Public Schools, (3) employed under a limited contract (608) pursuant to R.C. 3319.08(C)(3), and, (4) required to have a certificate pursuant to R.C. 3319.221 as a school nurse. As such, May meets R.C. 3307.01(B)(1)'s definition of "teacher."

**{¶38}** For the foregoing reasons, the trial court correctly found STRB's determination regarding May's allowed participation in STRS to be supported by "some evidence."

**{¶39}** Accordingly, I disagree with the majority and would affirm the judgment of the trial court.

APPEARANCES:

RONALD J. HABOWSKI, Attorney at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and JOHN E. PATTERSON and CATHERINE J. CALKO, Assistant Attorneys General, for Appellee.

DENNIS R. THOMPSON and CHRISTY B. BISHOP, Attorneys at Law, for Appellee.